# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF ____ILLINOIS, EASTERN DIVISION____

UNITED STATES OF AMERICA

v.

JERMAINE M. ROBERSON

**FILED**
NOV 1 9 2007

NOV 1 9 2007

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**MAGISTRATE JUDGE**
UNDER SEAL **GERALDINE SOAT BROWN**

CRIMINAL COMPLAINT

**CASE NUMBER:**

**07 CR  769**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ____November 16, 2007____ in ____Cook____ County, in the ____Northern____ District of ____Illinois____ defendant,

did knowingly sell, transfer, and deliver falsely made, forged and counterfeited obligations of the United States, namely, counterfeit Federal Reserve notes totaling approximately $2,700, with intent that they be passed, published and used as true and genuine,

in violation of Title _18_ United States Code, Section _473_.

I further state that I am a _Special Agent with the United States Secret Service_ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: _X_ Yes    ___ No

William L. Chrones, Complainant

Sworn to before me and subscribed in my presence,

November 19, 2007
Date

at ____Chicago, Illinois____
City and State

U.S. Magistrate Judge Geraldine Soat Brown
Name & Title of Judicial Officer

Signature of Judicial Officer

<u>AFFIDAVIT</u>

STATE OF ILLINOIS   )
                     ) SS
COOK COUNTY       )

I, William L. Chrones, being first duly sworn on oath, depose and state as follows:

**Background of Affiant**

1.       I am a federal law enforcement officer employed as a Special Agent of the United States Secret Service. I have been employed by the Secret Service since November, 2006. I am currently assigned to the Counterfeit Currency squad of the Chicago Field Office. As part of my regular duties, I have participated in numerous investigations involving counterfeit United States currency since becoming a Special Agent. My duties primarily involve investigating crimes concerning the counterfeiting and forgery of United States currency, including violations of Title 18, United States Code, Sections 471, 472, 473, and 474.

**Basis of Knowledge and Purpose of Affidavit**

2.       The information set forth in this Affidavit is based upon, among other things, my personal knowledge, information provided to me by other law enforcement officers and agents who participated in this investigation and my review of certain public filings and law enforcement records relating to this investigation. This Affidavit is for the limited purpose of establishing probable cause in support of a criminal complaint charging that JERMAINE M.

1

ROBERSON ("ROBERSON"), did knowingly sell, transfer, and deliver falsely made, forged, and counterfeited obligations of the United States, namely, counterfeit Federal Reserve notes totaling approximately $2,700, with intent that they be passed, published and used as true and genuine, in violation of Title 18 United States Code, Section 473.

### Background of Investigation

4.        On April 13, 2005, ROBERSON was arrested in the Northern District of Illinois and charged with one count of violating Title 18, United States Code, Section 472, which prohibits possession or passing counterfeit United States currency.  On July 8, 2005, ROBERSON pled guilty.  On September 9, 2005, ROBERSON was sentenced to three years probation.

### *Cooperating Individual #1*

5.        On June 19, 2007, SA Mike Bush and SA Stacy Holan interviewed Cooperating Individual One ("CI #1"), at the Chicago Field Office regarding his/her knowledge of an individual who is allegedly manufacturing and distributing counterfeit U.S. currency in the Chicago area.  According to the CI, one week prior to his interview he/she personally purchased twenty-five counterfeit $100.00 Federal Reserve Notes ("FRN") (total value $2,500.00) from an individual he/she identified as ROBERSON in exchange for $350.00 in genuine U. S. currency.  CI #1 positively identified ROBERSON's photo as being the individual from whom he/she purchased the counterfeit $100 FRNs, and, thereafter, CI #1

turned over $700 of the counterfeit notes to the Secret Service.  He/she turned over the other

$1,800 of counterfeit notes to the Secret Service on June 20, 2007.

6.        CI #1 is currently sentenced following his/her conviction for a federal crime

related to drugs. Since his arrest, he/she has assisted with a federal investigation, providing

reliable intelligence and making several controlled transactions.  He/she agreed to assist the

Secret Service with this investigation in the hope that his/her sentence might be further

reduced.

7.        SA Mike Bush and SA Stacy Holan examined the subject Federal Reserve Notes

provided to us by CI #1.  Based upon their training and experience in the analysis of

counterfeit notes, they determined that these notes were counterfeit.  The examination of the

notes revealed, among other things, that the printing method, ink, and security features used to

manufacture the counterfeit notes were not consistent with genuine United States currency.

Examination of the notes revealed they were bleached $5 FRNs that were reprinted with

counterfeit $100 images.  The counterfeit $100 images had genuine $5 FRN security features

such as the watermark bearing the face of Lincoln, the security threads with the "USA FIVE"

down them, and the location of the security threads being center to left of the Federal Reserve

seal instead of between the Federal Reserve seal and portrait as on a genuine $100 FRN. The

counterfeit currency appeared to be printed by an ink jet printer.

8.        On or about June 28, 2007, at the direction of law enforcement, placed a

consensually monitored and recorded phone call to the number that CI #1 previously used to

3

contact ROBERSON and spoke with an individual who CI #1 identified as ROBERSON, requesting to purchase counterfeit currency. CI #1 and ROBERSON agreed to meet at ROBERSON's house located at 9506 S. Loomis, Chicago, Illinois.

9.      On or about June 28, 2007, a controlled buy of counterfeit currency was conducted between CI #1 and ROBERSON at ROBERSON's residence at 9506 S. Loomis. CI #1 was provided a digital recorder and body wire. CI #1 and CI #1's vehicle were searched by Secret Service Agents for counterfeit currency with negative results before being continuously surveilled. As observed by surveillance, the sequence of events was as follows: CI #1 arrived at 9506 S. Loomis and placed a call to ROBERSON who informed CI #1 that the counterfeit was not ready but that it would be ready the next day.

10.     During the call placed by CI #1, ROBERSON continued to say that the money was drying and that he could not put it in the oven or it would shrink. ROBERSON also told the CI that since his previous batch had bled or run, he would need some time to make more.

11.     On or about June 29, 2007, at the direction of law enforcement, CI #1 placed a consensually monitored and recorded phone call to ROBERSON requesting an update concerning the counterfeit currency ROBERSON had promised on June 28, 2007. ROBERSON said that he had the counterfeit ready and for CI #1 to come to ROBERSON's residence at 9506 S. Loomis.

12.     On or about June 29, 2007, a controlled buy of counterfeit cash was conducted with CI #1 and ROBERSON at ROBERSON's residence at 9506 S. Loomis. CI #1 and CI

4

#1's vehicle were searched by Secret Service Agents for counterfeit currency with negative results before being continuously surveilled.

13.       CI #1 arrived at ROBERSON's residence at 9506 S. Loomis and pulled into the driveway.  CI #1 called ROBERSON from his/her cell phone and told ROBERSON he/she was outside.  ROBERSON informed CI #1 that he would be out in a few minutes with the counterfeit.  Secret Service special agents parked in a surveillance van across the street watched ROBERSON exit the front door of 9506 S. Loomis with what appeared to be a handful of cash and get into CI #1's vehicle parked in the driveway and overheard—from a recording device on CI #1 —the conversation between CI #1  and ROBERSON.  CI #1 paid ROBERSON $700 in genuine currency and received $5,000 in counterfeit FRNs. ROBERSON exited CI #1's vehicle without the handful of cash previously observed and went back into the residence.  CI #1 then met with U.S. Secret Service agents and turned over the counterfeit FRN's that he/she purchased from ROBERSON.

14.       SA Bryan Perry examined the fifty counterfeit Federal Reserve Notes sold by ROBERSON to CI #1 on or about June 29, 2007.  Based on his training and experience in the analysis of counterfeit notes, these notes were determined to be counterfeit, manufactured via ink jet method.  The examination of the notes revealed, among other things, that the printing method, ink, and security features used to manufacture the counterfeit notes were not consistent with genuine United States currency.

15.       On or about July 12, 2007, at the direction of law enforcement, CI #1 placed a consensually monitored and recorded phone call to ROBERSON requesting to purchase counterfeit currency.  CI #1 agreed to purchase $5,000 in counterfeit FRNs from ROBERSON at ROBERSON's residence at 9506 S. Loomis the following day.

16.       On or about July 13, 2007, SA Stacy Holan spoke with CI #1 concerning ROBERSON.  CI #1 informed her that he/she had run into ROBERSON the previous night and ROBERSON said the counterfeit would not be ready due to running out of ink in his printer. ROBERSON told the CI that the counterfeit would be ready next week.

17.       On or about July 15, 2007, SA Stacy Holan received a phone call from CI #1 informing her that while driving around, he/she ran into ROBERSON, who stated that he was having issues with his printer and that he should have it fixed by the beginning of the week. CI #1 stated that it was not a problem but that he/she really needed $10,000 in order to pay the "Mexicans" the money that he/she owes them.  Roberson agreed to make the $10,000 counterfeit for CI #1 in exchange for $1,300 genuine currency.

18.       On or about July 17, 2007, after being provided with a digital recorder and body wire, CI #1 drove to ROBERSON's residence at 9506 S. Loomis.  ROBERSON stated that he was waiting for a new printer to arrive and that he would make the $10,000 counterfeit for CI #1 first.  ROBERSON further explained that he had several other orders to fill but that the counterfeit would be ready sometime on July 19, 2007.

6

19.    On or about July 19, 2007, after being provided with a digital recorder and body wire, CI #1 drove to ROBERSON's residence at 9506 S. Loomis. CI #1 and CI#1's vehicle were searched by Secret Service Agents for counterfeit currency with negative results before being continuously surveilled. ROBERSON sold the CI $5,000 in counterfeit for $700.00 genuine. ROBERSON stated that he would have the other $5,000 ready later that night. CI #1 confirmed with ROBERSON that the price for the remaining $5,000 counterfeit would be $600.00 FRNs. After the sale, CI #1 turned over the counterfeit to the Secret Service.

20.    SA Mike Bush and SA Stacy Holan examined the subject Federal Reserve Notes. Based upon their training and experience in the analysis of counterfeit notes, they confirmed that these notes were counterfeit. The examination of the notes revealed, among other things, that the printing method, ink, and security features used to manufacture the counterfeit notes were not consistent with genuine United States currency. Examination of the notes revealed they were bleached $5 FRNs that were reprinted with counterfeit $100 images. The counterfeit $100 images had genuine $5 FRN security features such as the watermark bearing the face of Lincoln, the security threads with the "USA FIVE" down them, and the location of the security threads being center to left of the Federal Reserve seal instead of between the Federal Reserve seal and portrait as on a genuine $100 FRN. Examination of the notes revealed that there were seven counterfeit notes that bore no security features. These seven counterfeit notes are all Series 2003. These notes have no security threads, no

watermarks, and no security fibers. Series 2003 FRNs should bear all of these features in the notes. The counterfeit currency appears to be printed by an ink jet printer. Upon further examination, SA Mike Bush and SA Stacy Holan discovered that ROBERSON had actually sold CI #1 $5,100 (not $5,000) for $700.00.

### *July 23, 2007 Arrest of Roberson and Search of 9506 S. Loomis*

21.     Following the above controlled purchases of counterfeit United States currency, on July 23, 2007, the Honorable Martin C. Ashman issued an arrest warrant for ROBERSON for violation of Title 18, United States Code, Section 473, distribution of counterfeit U.S. currency.

22.     Additionally, on July 23, 2007, the government sought and received a search warrant for ROBERSON's residence at 9506 S. Loomis. U.S. Secret Service agents then executed the search warrant at 9506 S. Loomis. Among other items recovered, agents found the following: fifty bleached genuine $5 FRNs, five counterfeit $100 FRNs, seven counterfeit $20 FRNs, fifty-nine genuine $100 FRNs, a HP PSC 2410 Photosmart "All-In-One" printer, and a shredder containing scraps of paper bearing images of FRNs. One of the counterfeit $100 FRNs recovered from ROBERSON's bedroom bore serial number FJ03042143A, the same serial number borne by one of the genuine $100 FRNs found in his bedroom. Additionally, at least five of the genuine $100 FRNs found in ROBERSON's bedroom bore the same serial numbers as FRNs used by CI #1 to purchase counterfeit from ROBERSON.

23.    Subsequent to the search, the Secret Service interviewed ROBERSON, after

informing him of his *Miranda* rights. ROBERSON admitted to manufacturing and distributing

approximately $350,000 in counterfeit FRNs. ROBERSON told the Secret Service that he

printed the counterfeit FRNs on the HP PSC 2410 Photosmart "All-In-One" printer recovered

from his bedroom at the target residence.

24.    The Secret Service also interviewed another resident of the target residence,

after informing him/her of his/her *Miranda* rights. The resident admitted to independently

manufacturing and distributing approximately $72,000 in counterfeit FRNs using

ROBERSON's PSC 2410 Photosmart "All-In-One" printer. The resident claims that he/she

learned how to manufacture counterfeit by observing ROBERSON.

25.    ROBERSON was arrested on July 25, 2007. On August 1, 2007, he was

released on bond. The conditions of release specified that ROBERSON was subject to

electronic monitoring and that he was subject to home detention at the target residence.

### *Events of November 2007*

26.    On or about November 16, 2007, the Secret Service contacted Cooperating

Individual Two ("CI #2"), who has no criminal history but is the subject of a Secret Service

investigation into the passing of counterfeit at retail stores.

27.    CI #2 told the Secret Service that he/she recently purchased counterfeit FRNs

from an individual nicknamed "Blue" who lives at 95th and Loomis in Chicago, Illinois, the

general location of the target residence. CI #2 described the individual as a tall, light-skinned

9

black male with a thin build and a tattoo of a Chinese symbol on the front of his neck as well

as an unknown tattoo on the left side of his neck. The physical description of the individual by

CI #2 matches the physical description of ROBERSON. CI #2 also told the Secret Service that

the individual wore an ankle bracelet used for the electronic monitoring of individuals, and

said that the individual told him/her that he needed to meet at his residence because he was

subject to electronic monitoring.

28.    CI #2 also told the Secret Service that he/she purchased $3,000 in counterfeit

currency from "Blue" on or about November 13, 2007 in exchange for $600 in genuine

currency. CI #2 said that the transaction occurred outside the side door of the target residence.

CI #2 also stated that he/she was scheduled to purchase $3,000 in counterfeit from "Blue" at

the target residence at 1:00 p.m. that day.

29.    CI #2 also told the Secret Service that the telephone number he/she used to

contact "Blue" was (773) 827-0585. The Secret Service conducted a query of the Master

Center Index, which contains phone numbers and other contact information uncovered in the

course of Secret Service investigations. The query indicated that (773) 827-0585 is a phone

number known to be utilized by ROBERSON in connection with the sale of counterfeit.

30.    On or about November 16, 2007, at the direction of law enforcement, CI #2

placed several consensually monitored and recorded phone calls to ROBERSON requesting to

purchase counterfeit currency. CI #2 and ROBERSON agreed to meet at the target residence

at 4:00 p.m. that day.

31.     Later that day, shortly before the scheduled transaction, ROBERSON called CI #2 while CI #2 was en route to the target residence.  ROBERSON told CI #2 to park at a nearby gas station, walk through the alley behind the target residence, and meet him in the rear of the target residence.

32.     On or about November 16, 2007, after CI #2 was provided with a digital recorder and body wire, a controlled buy of counterfeit cash was conducted with CI #2 and ROBERSON at the target residence.  CI #2 and CI#2's vehicle were searched by Secret Service Agents for counterfeit currency with negative results before being continuously surveilled.  Prior to the transaction, CI #2 was only in possession of $600 in genuine currency, which was provided to him/her by the Secret Service.  At the back door of the target residence, according to CI #2, CI #2 paid ROBERSON $600 in genuine currency and received $2,700 in counterfeit FRNs.  ROBERSON agreed to give CI #2 an additional $500 in counterfeit FRNs on or about November 19, 2007.  After the sale, CI #2 turned over the counterfeit to the Secret Service.

33.     SA Mike Bush and I examined the twenty-seven counterfeit Federal Reserve Notes sold by ROBERSON to CI #2 on or about November 16, 2007.  Based upon our training and experience in the analysis of counterfeit notes, we confirmed that these notes were counterfeit.  The examination of the notes revealed, among other things, that the printing method, ink, and security features used to manufacture the counterfeit notes were not consistent with genuine United States currency.  Examination of the notes revealed they were

11

all bleached $5 FRNs that were reprinted with counterfeit $100 images. The counterfeit $100

images had genuine $5 FRN security features such as the watermark bearing the face of

Lincoln, the security threads with the "USA FIVE" down them, and the location of the

security threads being center to left of the Federal Reserve seal instead of between the Federal

Reserve seal and portrait as on a genuine $100 FRN. The counterfeit currency appears to be

printed by an ink jet printer. In addition, each of the twenty-seven subject notes contained the

exact same physical identifiers, which is inconsistent with the manufacturing of genuine

currency.

34.      On or about November 16, 2007, I showed CI #2 a photo lineup containing a

known photo of ROBERSON. CI #2 positively identified ROBERSON as "Blue", the

individual from whom he/she purchased the counterfeit earlier that day and on several previous

occasions.

## *Conclusion*

35.     Based on the foregoing facts, Affiant respectfully submits that there is probable

cause to believe that JERMAINE M. ROBERSON did knowingly sell, transfer, and deliver

falsely made, forged, and counterfeited obligations of the United States, namely, counterfeit

Federal Reserve notes totaling approximately $2,700, with intent that they be passed,

published and used as true and genuine, in violation of Title 18 United States Code, Section

473.

FURTHER AFFIANT SAYETH NOT.

William L. Chrones
Special Agent
United States Secret Service

Sworn to me this 19th day of November, 2007.

Geraldine Soat Brown
United States Magistrate Judge